Craig A. Wolfe
Jason R. Alderson
T. Charlie Liu
David K. Shim
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile:  (212) 309-6001
craig.wolfe@morganlewis.com
jason.alderson@morganlewis.com
charlie.liu@morganlewis.com
david.shim@morganlewis.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SOLSTICE MARKETING CONCEPTS LLC, | Case No. 21-10306 (MG) |
| Debtor.[1] | |

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION OBLIGATIONS TO CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF

Solstice Marketing Concepts LLC (the "Debtor")[2], as debtor and debtor in possession in the above-referenced chapter 11 case (the "Chapter 11 Case"), by and through counsel, hereby files this motion (the "Motion") seeking entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order," together

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is: Solstice Marketing Concepts LLC (4579).

[2] A detailed description of the Debtor and its business, and the facts and circumstances supporting this Motion and the Debtor's Chapter 11 Case are set forth in greater detail in the *Declaration of Jacen A. Dinoff in Support of the Debtor's Chapter 11 Petition, First Day Motions and Related Filings* (the "First Day Declaration").

with the Interim Order, the "Orders"), granting the relief requested herein.  In support of this

Motion, the Debtor respectfully states as follows:

## BACKGROUND

1.      The Debtor, a Delaware limited liability company, is a brick and mortar and online

retailer of designer, contemporary and sport sunglasses for women, men and children, operating

under the brand name Solstice Sunglasses (www.solsticesunglasses.com).  On July 1, 2019,

Fairway, LLC ("Fairway") purchased all of the membership interests of the Debtor from Safilo

America, Inc., and Fairway now serves as the sole manager of the Debtor.

2.      On February 17, 2021 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code").  As of the Petition Date, the Debtor has 66 retail stores and approximately 95 full-time

and 115 part-time employees.  The Debtor filed for chapter 11 relief because the ongoing COVID-

19 pandemic has caused store revenue to drop more than half from approximately $49 million in

calendar year 2019 to just under $22 million in 2020.  The Debtor intends to reorganize under the

small debtor provisions (subchapter V) of chapter 11 of the Bankruptcy Code.

3.      In the ordinary course of business, the Debtor relies on a network of vendors (each,

a "Critical Vendor") to provide a consistent stock of essential goods and services that customers

expect to find in the Debtor's retail stores and on the Debtor's website.  The Debtor's businesses

and cash flow are dependent on a carefully designed inventory system that ensures the efficiency

delivery and sale of goods.  It is absolutely vital to the success of the Debtor's Chapter 11 Case

that the Debtor's supply chain for inventory remains uninterrupted.

4.      The Critical Vendors include twelve merchandise suppliers and two service

providers that are not bound by executory contracts and cannot be economically replaced:

| Vendor Name | Services |
|---|---|
| MADALUXE | Merchandise supplier that offers payment terms with 100% exchange allowance |
| MAUI JIM | Merchandise supplier that offers 100% exchange allowance and supports windows, events and other key marketing |
| KERING EYEWEAR USA INC | Merchandise supplier for branded merchandise offers exchange allowance and supports our windows, events and other marketing |
| B ROBINSON LLC | Merchandise supplier that offers 100% exchange allowance and supports our windows, events and other marketing |
| DERIGO REM | Merchandise supplier offering 100% exchange allowance and supports windows, events and marketing. They are building a portfolio of special brands |
| THELIOS USA INC | Merchandise supplier offering 100% exchange allowance and supports windows, events and marketing. |
| EYE CANDY CREATIONS USA | Merchandise supplier with two brands planned for potential spring, offers 100% exchange allowance at any point |
| RUNNING AND CYCLING ENTERPRISES (RACE) | Merchandise supplier with specialized product. |
| DITA INC | Merchandise supplier offering valuable repayment terms and windows/marketing support |
| KREWE DU OPTIC LLC | Merchandise supplier on several key brands |
| L'AMY AMERICA | Merchandise supplier on several key brands |
| OLIVER PEOPLES GROUP | Merchandise supplier offering exchange allowance and supports windows, events and other marketing |
| LOOMIS | Armored car transport for cash deposits, only provider with miles of certain store locations |
| MBG CONSULTING INC. | Third party manager of company lease contracts and payments |

The Debtor, in its sound business judgment, reserves the right to refrain from providing any of the Critical Vendors the critical vendor treatment proposed herein.

## JURISDICTION AND VENUE

5.    The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.       Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.       The statutory bases for the relief requested herein are sections 105(a), 363(b), and 503(B)(6) of the Bankruptcy Code.

## RELIEF REQUESTED

8.       By this Motion, the Debtor seeks entry of the Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) authorizing the Debtor to pay up to $300,000 on an interim basis (the "Interim Critical Vendor Cap") and an additional $300,000 on a final basis, for total authority to pay up to $600,000 (collectively, the "Critical Vendor Cap") on account of the prepetition claims (the "Critical Vendor Claims") of Critical Vendors that are essential to the ongoing business operations of the Debtor, are not bound to provide goods or services to the Debtor, and would cost more than the critical vendor payments in harm to the estate or to replace if they stopped working with the Debtor, and (b) granting related relief, in each case subject to the Debtor's debtor-in-possession financing facility and any applicable orders with respect thereto.

9.       The aggregate prepetition amounts owed to the Critical Vendors are approximately $1.2 million, and the Debtor is seeking to pay up to $600,000 to them in order for agreements to continue extending trade terms to the Debtor throughout the duration of the Chapter 11 Case.  The Debtor also intends to include a continuing trade class in its forthcoming chapter 11 plan of reorganization that will provide a substantial additional payment on account of the Critical Vendors' prepetition claims in consideration for them continuing to provide trade terms after the effective date of the plan of reorganization.  The Critical Vendors' support is crucial to the ensuring

the success of the Debtor during and after this Chapter 11 Case.  The Debtor anticipates filing its proposed chapter 11 plan within the next two weeks.

10.    The Debtor also requests that the Court schedule a final hearing within approximately 30 days of the commencement of the Chapter 11 Case to consider approval of this Motion on a final basis.

### A.    Critical Vendor Notice

11.    The Debtor also seeks approval of (a) the form of notice that will be provided to any vendors requesting Critical Vendor status and payment of Critical Vendor Claims (the "Critical Vendor Notice"), in substantially the form annexed hereto as **Exhibit C**, and (b) the form of vendor agreement (the "Vendor Agreement"), in substantially the form annexed to the Critical Vendor Notice as **Exhibit 1**.  The Critical Vendor Notice, along with a copy of the Interim Order or the Final Order approving the relief requested herein, as applicable, will be provided to any vendor requesting treatment as a Critical Vendor and payment of Critical Vendor Claims.  The Critical Vendor Notice summarizes keys aspects of the Orders and includes as an exhibit a copy of the Vendor Agreement.

### B.    Vendor Agreement

12.    As the *quid pro quo* for payment of Critical Vendor Claims, the Debtor will use commercially reasonable efforts to require Critical Vendors to continue to provide trade terms in line with historical practice.  Thus, the Debtor seeks authority to require as a condition to payment of a Critical Vendor Claim that the applicable Critical Vendor (including a Critical Vendor whose Critical Vendor Claim may be entitled to priority under section 503(b)(9) of the Bankruptcy Code) enter into a Vendor Agreement.  The Vendor Agreement requires a Critical Vendor to continue to supply goods or services to the Debtor on "Customary Trade Terms" until the earlier of (a) the

5

effective date of a chapter 11 plan for the Debtor, and (b) one year after the date of such agreement. As defined in the Vendor Agreement, "Customary Trade Terms" means trade terms at least as favorable to the Debtor as those terms governing the Debtor's practice and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs), with respect to that particular Critical Vendor, within the twelve months prior to the Petition Date, or such other trade terms that are acceptable to the Debtor in its sole discretion.  The Vendor Agreement, once agreed to and accepted by a Critical Vendor, shall be the legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein.

13.    The Debtor also seeks authority, to be exercised in rare circumstances, to pay a Critical Vendor Claim in the event that no Vendor Agreement has been executed, only, if the Debtor determines in its reasonable business judgment, that a Vendor Agreement is unnecessary to ensure that the applicable Critical Vendor's continued performance on Customary Trade Terms, subject to the express authorization of the Debtor's Chief Restructuring Officer.

### C.    Additional Payment Terms and Conditions

14.    Certain of the Critical Vendors may possess possessory or similar state law trade liens (the "Trade Liens") on the Debtor's assets based upon the Critical Vendor Claims.  The Debtor proposes that, as a further condition to receiving payment of a Critical Vendor Claim, a Critical Vendor must agree to take all necessary actions to remove any such Trade Lien at the Critical Vendor's sole expense.

15.    In the event that (i) a Critical Vendor breaches the terms or conditions of a Vendor Agreement or (ii) regardless of whether a Vendor Agreement has been executed, a Critical Vendor

accepts payment with respect to a Critical Vendor Claim and does not continue supplying goods or services to the Debtor on Customary Trade Terms, the Debtor requests authority, in its sole discretion, to (i) declare that the payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code, that the Debtor may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations), (ii) declare that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim to the Debtor without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount so as to restore the Debtor and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made, and/or (iii) if there exists an outstanding postpetition balance due from the Debtor to such Critical Vendor, recharacterize and apply any payment made pursuant to the relief requested in the Motion to such outstanding postpetition balance and such Critical Vendor shall be required to repay to the Debtor such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## **BASIS FOR RELIEF**

16.     The Court has authority to grant the relief requested herein pursuant to sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code.

### A.     **Maintaining the Debtor's Critical Vendor Relationships and Payment of Obligations Related Thereto is Warranted**

17.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363 of the Bankruptcy

Code, a court may authorize a debtor to pay certain prepetition claims if a sound business purpose

exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989)

(finding that there must be a sound business justification to justify payment of prepetition wages);

*Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391,

397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay

prepetition claims of suppliers). The business judgment rule is satisfied where "the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action taken

was in the best interests of the company." *Official Comm. of Subordinated Bondholders v.

Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting

*Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

18.     Moreover, if "the debtor articulates a reasonable basis for its business decisions (as

distinct from a decision made arbitrarily or capriciously), courts will generally not entertain

objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.

(In re Johns-Manville Corp*.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citations omitted). Courts

in this District consistently have declined to interfere with corporate decisions absent a showing

of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such

decisions are attributable to any "rational business purpose." *In re Integrated Res., Inc.*, 147 B.R.

at 656 (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

19.     In addition, the Court has the authority, pursuant to its equitable powers under

section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief

is necessary for the Debtor to carry out its fiduciary duties under section 1107(a) of the Bankruptcy

Code. Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105. Section 1107(a) of the Bankruptcy Code contains an implied duty of the debtor-in-possession to act as a fiduciary to protect and preserve the estate, including an operating business' going-concern value, on behalf of the debtor's creditors and other parties in interest. *See Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee").

20.     Payment of prepetition claims is authorized under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business. *See, e.g., In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *In re Fin. News Network Inc.*, 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991); *In re Just for Feet, Inc.,* 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity and noting that the bankruptcy court has "power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11").

21.     Furthermore, section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Claims subject to section 503(b)(9) of the Bankruptcy Code must be paid in full for the Debtor to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Consequently, payment now only provides such creditors what they would otherwise be entitled to receive under a chapter 11 plan.

22.     The Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation. As administrative claims incurred in the ordinary course of business, the Debtor

submits that it may pay such claims in accordance with its business judgment pursuant to section 363(c)(1) of the Bankruptcy Code. Courts in this district and others have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business. *See, e.g., In re Park Ave. Leather Goods LLC,* Case No. 20-12495 (SCC) (Bankr. S.D.N.Y. Nov. 13, 2020) [Docket No. 34] (authorizing debtors to pay vendors' claims entitled to priority under section 503(b)(9) of the Bankruptcy Code) *In re Westinghouse Elec. Co., LLC*, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 1, 2017) [Docket No. 640] (same); *In re Angelica Corp.*, Case No. 1710870 (JLG) (Bankr. S.D.N.Y. May 12, 2017) [Docket No. 177] (same).

23.     Allowing a debtor to honor prepetition obligations under this authority is appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).

**B.     Payment of the Critical Vendor Claims as Provided Herein is Necessary and Appropriate to Ensure the Success of the Debtor's Chapter 11 Case**

24.     The Debtor's ongoing ability to obtain goods and services from its Critical Vendors as provided herein is necessary to preserve the value of its estate for the benefit of its stakeholders. Absent payment of the Critical Vendor Claims the Debtor would be unable to maintain sufficient levels of inventory with the variety and quality its customers have come to expect. The Debtor must be able to continue to operate its retail stores and website in the ordinary course of business in order to maximize the value available for distribution to creditors, which requires cooperation from certain key vendors. Consequently, the Debtor's request for authority to honor the Critical Vendor Claims is both consistent with the priorities established by the Bankruptcy Code and necessary to preserve the value of its business.

25.     The Debtor's authority to address its Critical Vendor Claims in the initial days of this chapter 11 case will send a clear signal to its suppliers and customers that the Debtor is both willing and, importantly, able to conduct business as usual after the Petition Date.  The Debtor will also use its authority to secure Customary Trade Terms from its vendors.  Absent such relief, Critical Vendors may have no incentive to continue to provide the Debtor with trade credit.  In fact, the Debtor believes many vendors will begin demanding accelerated payment, cash-in-advance or cash-on-delivery.  Further contractions could be catastrophic for the Debtor, its estate, and all stakeholders.  In contrast, the preservation of working capital through the retention or reinstatement of trade credit in sufficient amounts and on favorable terms will conserve liquidity, stabilize the Debtor's business operations, and facilitate its ability to maximize value.

### PROCESSING OF CHECKS AND
### ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

26.     The Debtor will have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, and through and subject to the terms of the Debtor's anticipated access to post-petition financing.  Under the Debtor's existing cash management system, the Debtor has made arrangements to readily identify checks or wire transfer requests relating to the Critical Vendor Claims referenced herein, as applicable.  Accordingly, the Debtor believes that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. Therefore, the Debtor respectfully requests that the Court authorize all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**RESERVATION OF RIGHTS**

27.     Nothing in this Motion should be construed as (a) authority to assume or reject any executory contract or unexpired lease, or as a request for the same, (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtor's ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law, (c) a promise to pay any claim or other obligation, (d) granting third-party-beneficiary status or bestowing any additional rights on any third party, (e) being otherwise enforceable by any third-party, or (f) otherwise prejudicial to the Debtor's rights to contest any amounts owed in connection with the obligations discussed herein.

**RELIEF IS AUTHORIZED UNDER BANKRUPTCY RULE 6003**

28.     Under Bankruptcy Rule 6003, a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate," including a motion to pay all or part of a claim that arose before the filing of the petition (other than a motion filed under Bankruptcy Rule 4001) shall not be granted within 21 days of the petition date except to the extent that relief is necessary to avoid immediate and irreparable harm. Fed. R. Bankr. P. 6003. The Debtor requires smooth coordination across its supply chain to provide customers with the quality and quantity of goods they have come to expect from the Debtor. To do so, the Debtor depends heavily on the goods and services provided by the Critical Vendors. Non-payment of Critical Vendor Claims could jeopardize this chapter 11 case before it even begins, exposing the Debtor to immediate and irreparable harm far in excess of the relief requested herein. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003(b) is satisfied.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

29.     In light of the foregoing, the Debtor respectfully requests that the Court enter an order finding that notice has been sufficient under Bankruptcy Rule 6004(a), and waiving the 14-day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

30.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Subchapter V trustee; (iii) counsel to administrative agent and collateral agent for the Debtor's debtor-in-possession credit facility; (iv) the Debtor's 20 largest unsecured creditors; (v) the Office of the United States Attorney for the Southern District of New York; (vi) the banks and financial institutions where the Debtor maintains accounts; and (vii) any such other party entitled to notice pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York or that requests notice pursuant to Bankruptcy Rule 2002.  The Debtor respectfully submits that notice has been adequate for the relief requested.

## NO PRIOR REQUEST

31.     The Debtor has not made any prior request to this or to any other court for the relief sought herein.

*[Remainder of page intentionally left blank]*

## <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested

herein, substantially in the forms attached hereto as **<u>Exhibit A</u>** and **<u>Exhibit B</u>**, and such other and

further relief as is just and appropriate.

Dated: February 22, 2021
      New York, NY                                        **MORGAN, LEWIS & BOCKIUS LLP**


                                              By: <u>/s/    Craig A. Wolfe     </u>
                                              Craig A. Wolfe
                                              Jason R. Alderson
                                                T. Charlie Liu
                                              David K. Shim
                                              101 Park Avenue
                                              New York, NY 10178
                                              Telephone: (212) 309-6000
                                              Facsimile:  (212) 309-6001
                                              craig.wolfe@morganlewis.com
                                              jason.alderson@morganlewis.com
                                              charlie.liu@morganlewis.com
                                              david.shim@morganlewis.com


                                              *Proposed Counsel for Debtor and Debtor-*
                                              *in-Possession*

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SOLSTICE MARKETING CONCEPTS LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-10306 (MG) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTOR
## TO PAY CERTAIN PREPETITION OBLIGATIONS
## TO CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Solstice Marketing Concepts LLC (the "Debtor"), as debtor and debtor in possession in the above-referenced chapter 11 case, pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, for entry of interim and orders (i) authorizing the Debtor to pay up to $300,000 on an interim basis (the "Interim Critical Vendor Cap") and an additional $300,000 on a final basis, for total authority to pay up to $600,000 (collectively, the "Critical Vendor Cap") on account of the prepetition claims (the "Critical Vendor Claims") of claims of certain vendors, suppliers, service providers, and other similar entities that the Debtor determines, in its sole discretion and based on its sound business judgment, are essential to its ongoing business operations and maximizing the value of its enterprise as a going concern (the "Critical Vendors" whose prepetition claims are defined as the "Critical Vendor Claims"); (ii) approving the form of Critical Vendor Notice, substantially in the form attached to the Motion as **Exhibit C**; (iii) approving the form of Vendor Agreement, substantially in the form attached to the Critical Vendor Notice as **Exhibit 1**; and (iv) granting related relief, as all more fully set forth in

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is: Solstice Marketing Concepts LLC (4579).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference from the United States District Court for the*

*Southern District of New York*, dated January 31, 2012; and this Court having the power to enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and consideration of the Motion and the requested relief is a core proceeding

pursuant to 28 U.S.C. § 157(b); and this Court having found that the Debtor's notice of the Motion

and opportunity for a hearing on the Motion were appropriate under the circumstances and no other

notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court; and this Court

having determined that the legal and factual bases set forth in the Motion and at the hearing

establish just cause for the relief granted herein; and upon all of the proceedings had before this

Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY**

**ORDERED THAT**:

1.    The Motion is **GRANTED** on an interim basis as set forth herein.

2.    The final hearing (the "Final Hearing") on the Motion shall be held on

[_____], 2021, at [____], prevailing Eastern Time.  Any objections or responses to entry of a

final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on

[_____], 2021, and shall be served on:  (a) the Debtor, Solstice Marketing Concepts LLC c/o

KCP Advisory Group LLC, 700 Technology Park Drive, Suite 212, Billerica, MA 01821,

Attn: Jacen A. Dinoff (jdinoff@kcpadvisory.com); (b) proposed counsel to the Debtor, Morgan,

Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178-0060, Attn: Craig A.

Wolfe (craig.wolfe@morganlewis.com); (c) counsel to Second Avenue Capital Partners LLC, as

administrative agent and collateral agent for the Debtor's debtor-in-possession credit facility, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com) and Hampton Foushee (hfoushee@choate.com); (d) the Subchapter V trustee, LaMonica Herbst & Maniscalco LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793, Attn: Salvatore LaMonica (sl@lhmlawfirm.com); and (e) Office of the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014, Attn: Susan A. Arbeit (susan.arbeit@usdoj.gov).  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      The Critical Vendor Notice, in substantially the form annexed as **<u>Exhibit C</u>** to the Motion, is approved in its entirety.

4.      The Vendor Agreement, in substantially the form annexed as **<u>Exhibit 1</u>** to the Motion, is approved in its entirety.

5.      The Debtor is authorized, but not directed, pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, to pay the Critical Vendor Claims of the fourteen Critical Vendors identified on the Motion, in an exercise of its business judgment, up to the Interim Critical Vendor Cap and upon such terms and in the manner provided in this Interim Order and the Motion.

6.      Except as otherwise provided herein, the Debtor shall condition payment of Critical Vendor Claims pursuant to this Interim Order upon the execution of a Vendor Agreement.  The Debtor is authorized, but not directed, to enter into Vendor Agreements when and if the Debtor determines, in the exercise of its sole reasonable business judgment, that it is appropriate to do so. A Vendor Agreement, once agreed to and accepted by a Critical Vendor, shall be the legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein; <u>provided that</u> the Debtor may agree to implement such modifications to the

form of Vendor Agreement the Debtor deems necessary or advisable in the reasonable exercise of its business judgment to obtain Customary Trade Terms (as defined below) from the applicable Critical Vendor; provided, further, that that the Debtor may pay a Critical Vendor Claim without the applicable Critical Vendor having executed a Vendor Agreement only if the Debtor determines, in its reasonable business judgment that a Vendor Agreement is unnecessary to ensure the applicable Critical Vendor's continued performance on Customary Trade Terms, subject to the express authorization of the Debtor's Chief Restructuring Officer.

7.      Any party who accepts payment from the Debtor of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall, at such party's sole expense, take all actions necessary to remove any mechanics' liens, possessory liens, or similar state law trade liens on the Debtor's assets that such party may have based upon such Critical Vendor Claim.

8.      Any party who accepts payment from the Debtor of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall be deemed to have agreed to the terms and provisions of this Interim Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims, of whatever type, kind or priority, against the Debtor, its property and estate, and its members, officers and employees up the amount paid.

9.      In the event a Critical Vendor breaches the terms or conditions of a Vendor Agreement, or regardless of whether a Vendor Agreement has been executed, a Critical Vendor who accepts payment from the Debtor of a Critical Vendor Claim and does not continue supplying goods or services to the Debtor on trade terms at least as favorable to the Debtor as those terms governing the Debtor's practices and programs within the twelve (12) months prior to the Petition Date (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables,

such as rebates and volume credits, and other programs) with respect to that particular Critical Vendor, or such other trade terms that are acceptable to the Debtor in its sole discretion (collectively, the "Customary Trade Terms"), the Debtor may seek appropriate relief from this Court on an expedited basis after notice and a hearing, including, without limitation, seeking to (a) declare that the payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtor may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations), (b) declare that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim to the Debtor without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount so as to restore the Debtor and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made, and/or (c) if there exists an outstanding postpetition balance due from the Debtor to such Critical Vendor, recharacterize and apply any payment made pursuant to the relief requested in the Motion to such outstanding postpetition balance and such Critical Vendor shall be required to repay to the Debtor such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

10.    All Vendor Agreements will terminate upon the entry of an order converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

11.    In the event a Critical Vendor breaches the terms or conditions of its Vendor Agreement, the Debtor may, in its sole discretion, declare that such Vendor Agreement has terminated; provided that the Vendor Agreement may be reinstated if:

     a)    after notice and hearing (following a motion filed by the respective Critical Vendor), the Bankruptcy Court reverses the Debtor's decision to terminate the

Vendor Agreement for good cause shown that the Debtor's determination was materially incorrect);

b)      the Critical Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Vendor Agreement; or

c)      the Debtor, in its sole discretion, reaches a commercially acceptable agreement with the breaching party.

12.     Nothing herein shall impair or prejudice the Debtor's ability to contest, in its sole discretion, the extent, perfection, priority, validity, or amounts of any claims or liens held by any Critical Vendor and the Debtor's rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims are fully preserved.

13.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtor to accelerate any payments not otherwise due prior to the date of the Final Hearing to consider the relief requested in the Motion on a final basis.

14.     Notwithstanding anything contained in the Motion or this Interim Order, any payment, obligation or other relief authorized by this Interim Order shall be subject to and limited by the applicable debtor in possession financing, budget and/or cash collateral authorization requirements imposed on the Debtor under the terms of any orders authorizing debtor in possession financing and the use of cash collateral, or the budget in connection therewith, entered by the Court in this Chapter 11 Case.

15.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (c) an agreement or obligation to pay any claims; (d) a waiver of any claims or

causes of action which may exist against any creditor or interest holder; (e) an admission as to the validity of liens, if any, satisfied pursuant to this Motion; or (f) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.  Likewise, any payment made pursuant to this Interim Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

16.     Except as otherwise set forth herein, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party.

17.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtor's instructions.

18.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Debtor's chapter 11 case with respect to prepetition amounts owed in connection with any Critical Vendor Claims referenced herein.

19.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief requested in the Motion, as granted hereby, avoids immediate and irreparable harm to the Debtor's estate.

20.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

21.    The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

22.    The Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____
    New York, NY


_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SOLSTICE MARKETING CONCEPTS LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-10306 (MG) |

## FINAL ORDER (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION OBLIGATIONS TO CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Solstice Marketing Concepts LLC (the "Debtor"), as debtor and debtor in possession in the above-referenced chapter 11 case, pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, for entry of interim and orders (i) authorizing the Debtor to pay up to $300,000 on an interim basis (the "Interim Critical Vendor Cap") and an additional $300,000 on a final basis, for total authority to pay up to $600,000 (collectively, the "Critical Vendor Cap") on account of the prepetition claims (the "Critical Vendor Claims") of certain vendors, suppliers, service providers, and other similar entities that the Debtor determines, in its sole discretion and based on its sound business judgment, are essential to its ongoing business operations and maximizing the value of its enterprise as a going concern (the "Critical Vendors" whose prepetition claims are defined as the "Critical Vendor Claims"); (ii) approving the form of Critical Vendor Notice, substantially in the form attached to the Motion as **Exhibit C**; (iii) approving the form of Vendor Agreement, substantially in the form attached to the Critical Vendor Notice as **Exhibit 1**; and (iv) granting related relief, as all more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is: Solstice Marketing Concepts LLC (4579).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Motion was appropriate under the circumstances and no other notice need be provided; and the Court having held a hearing on _____, 2021 to consider the relief requested in the Motion on an interim basis (the "Interim Hearing"); and upon the Court having entered an order granting the relief requested in the Motion on an interim basis [Dkt. No. _____] and scheduling a final hearing to consider the Motion on _____, 2021 (the "Final Hearing"); and the Final Hearing having been held to consider the relief requested in the Motion on a final basis; and upon the record of the Interim Hearing and the Final Hearing; and the Court having determined that the relief requested in the Motion being in the best interests of the Debtor, its creditors, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and good cause appearing thereof, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Critical Vendor Notice, in substantially the form annexed as **Exhibit C** to the Motion, is approved in its entirety.

3.      The Vendor Agreement, in substantially the form annexed as **Exhibit 1** to the Motion, is approved in its entirety.

4.      The Debtor is authorized, but not directed, pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, to pay the Critical Vendor Claims of the Critical Vendors, in

an exercise of its business judgment, up to the full $600,000 Critical Vendor Cap, which includes

the Interim Critical Vendor Cap previously authorized, and upon such terms and in the manner

provided in this Final Order and the Motion.

5.      Except as otherwise provided herein, the Debtor shall condition payment of Critical

Vendor Claims pursuant to this Final Order upon the execution of a Vendor Agreement.  The

Debtor is authorized, but not directed, to enter into Vendor Agreements when and if the Debtor

determines, in the exercise of its sole reasonable business judgment, that it is appropriate to do so.

A Vendor Agreement, once agreed to and accepted by a Critical Vendor, shall be the legally

binding contractual relationship between the parties governing the commercial trade relationship

as provided therein; _provided that_ the Debtor may agree to implement such modifications to the

form of Vendor Agreement the Debtor deems necessary or advisable in the reasonable exercise of

its business judgment to obtain Customary Trade Terms (as defined below) from the applicable

Critical Vendor; _provided_, _further_, _that_ that the Debtor may pay a Critical Vendor Claim without

the applicable Critical Vendor having executed a Vendor Agreement only if the Debtor determines,

in its reasonable business judgment that a Vendor Agreement is unnecessary to ensure the

applicable Critical Vendor's continued performance on Customary Trade Terms, subject to the

express authorization of the Debtor's Chief Restructuring Officer.

6.      Any party who accepts payment from the Debtor of a Critical Vendor Claim

(regardless of whether a Vendor Agreement has been executed) shall, at such party's sole expense,

take all actions necessary to remove any mechanics' liens, possessory liens, or similar state law

trade liens on the Debtor's assets that such party may have based upon such Critical Vendor Claim.

7.      Any party who accepts payment from the Debtor of a Critical Vendor Claim

(regardless of whether a Vendor Agreement has been executed) shall be deemed to have agreed to

the terms and provisions of this Final Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims, of whatever type, kind or priority, against the Debtor, its property and estate, and its members, officers and employees up the amount paid.

8.      In the event a Critical Vendor breaches the terms or conditions of a Vendor Agreement, or regardless of whether a Vendor Agreement has been executed, a Critical Vendor who accepts payment from the Debtor of a Critical Vendor Claim and does not continue supplying goods or services to the Debtor on trade terms at least as favorable to the Debtor as those terms governing the Debtor's practices and programs within the twelve (12) months prior to the Petition Date (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs) with respect to that particular Critical Vendor, or such other trade terms that are acceptable to the Debtor in its sole discretion (collectively, the "Customary Trade Terms"), the Debtor may seek appropriate relief from this Court on an expedited basis after notice and a hearing, including, without limitation, seeking to (a) declare that the payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtor may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations), (b) declare that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim to the Debtor without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount so as to restore the Debtor and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made, and/or (c) if there exists an outstanding postpetition balance due from the Debtor to such Critical Vendor,

recharacterize and apply any payment made pursuant to the relief requested in the Motion to such outstanding postpetition balance and such Critical Vendor shall be required to repay to the Debtor such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

9.      All Vendor Agreements will terminate upon the entry of an order converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

10.     In the event a Critical Vendor breaches the terms or conditions of its Vendor Agreement, the Debtor may, in its sole discretion, declare that such Vendor Agreement has terminated; provided that the Vendor Agreement may be reinstated if:

    a)      after notice and hearing (following a motion filed by the respective Critical Vendor), the Bankruptcy Court reverses the Debtor's decision to terminate the Vendor Agreement for good cause shown that the Debtor's determination was materially incorrect);

    b)      the Critical Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Vendor Agreement; or

    c)      the Debtor, in its sole discretion, reaches a commercially acceptable agreement with the breaching party.

11.     Nothing herein shall impair or prejudice the Debtor's ability to contest, in its sole discretion, the extent, perfection, priority, validity, or amounts of any claims or liens held by any Critical Vendor and the Debtor's rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims are fully preserved.

12.     Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order, intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim

against the Debtor; (c) an agreement or obligation to pay any claims; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an admission as to the validity of liens, if any, satisfied pursuant to this Motion; or (f) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.  Likewise, any payment made pursuant to this Final Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

13.     Notwithstanding anything contained in the Motion or this Final Order, any payment, obligation or other relief authorized by this Final Order shall be subject to and limited by the applicable debtor in possession financing, budget and/or cash collateral authorization requirements imposed on the Debtor under the terms of any orders authorizing debtor in possession financing and the use of cash collateral, or the budget in connection therewith, entered by the Court in this Chapter 11 Case.

14.     Except as otherwise set forth herein, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party.

15.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtor's instructions.

16.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a

consequence of the Debtor's chapter 11 case with respect to prepetition amounts owed in connection with any Critical Vendor Claims referenced herein.

17.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief requested in the Motion, as granted hereby, avoids immediate and irreparable harm to the Debtor's estate.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

19.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

20.     The Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____
     New York, NY

                                   _____
                                   THE HONORABLE MARTIN GLENN
                                   UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT C</u>**

**Proposed Critical Vendor Notice**

Craig A. Wolfe
Jason R. Alderson
T. Charlie Liu
David K. Shim
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile:  (212) 309-6001
craig.wolfe@morganlewis.com
jason.alderson@morganlewis.com
charlie.liu@morganlewis.com
david.shim@morganlewis.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SOLSTICE MARKETING CONCEPTS LLC, | Case No. 21-10306 (MG) |
| Debtor.[1] | |

## <u>NOTICE OF CRITICAL VENDOR PROGRAM</u>

On February 17, 2021 (the "<u>Petition Date</u>"), Solstice Marketing Concepts LLC (the "<u>Debtor</u>"), as debtor and debtor in possession in the above-referenced chapter 11 case, filed its voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>").

On February 22, 2021, the Debtor filed the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Certain Prepetition Obligations to Critical Vendors, and (II) Granting Related Relief* [Docket No. 14] (the "<u>Motion</u>").  Capitalized term used herein but not defined herein shall have the meanings ascribed to them in the Motion.

On February ___, 2021, the Court entered an order [Docket No. ___] granting the relief requested in the Motion on an interim basis (the "<u>Order</u>").

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is: Solstice Marketing Concepts LLC (4579).

To ensure the continued postpetition delivery of goods and services to the Debtor on market terms following the Petition Date, including credit terms, and facilitate orderly negotiations relating thereto, pursuant to the Order, among other things, the Bankruptcy Court authorized the Debtor to pay certain prepetition claims of certain vendors, suppliers, service providers, and other similar entities that the Debtor determines, in its sole discretion and based on their sound business judgment, are essential to its ongoing business operations and maximizing the value of their enterprise (the "Critical Vendors" whose prepetition claims shall be referred to as the "Critical Vendor Claims") who agree to, among other things, provide postpetition goods and/or services to the Debtor on Customary Trade Terms (as defined below).

This Notice summarizes certain key provisions of the Order and the Critical Vendor payment program established therein.  In the event of any inconsistency between this Notice and the Order, the Order shall control in all respects.

1.  <u>Payment Requests</u>.  All requests for payment of a Critical Vendor Claim must be emailed to jdinoff@kcpadvisory.com.

2.  <u>Vendor Agreement</u>.  The Debtor will condition the payment of Critical Vendor Claims on the execution by each Critical Vendor of a vendor agreement substantially in the form attached hereto as **Exhibit 1** (each, a "<u>Vendor Agreement</u>"), which agreement shall constitute a legally binding contractual relationship between the parties.

3.  <u>Customary Trade Terms</u>.  Pursuant to the Vendor Agreement, in order to receive payment of a Critical Vendor Claim, a Critical Vendor must agree to continue supplying goods or services to the Debtor on trade terms at least as favorable to the Debtor as those terms governing practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs) within the twelve (12) months prior to the Petition Date, or such other trade terms that are acceptable to the Debtor in its sole discretion (collectively, the "<u>Customary Trade Terms</u>").

4.  <u>Debtor's Remedies</u>.  If a Critical Vendor breaches its Vendor Agreement or otherwise accepts payment from the Debtor of a Critical Vendor Claim and does not continue supplying goods or services to the Debtor on Customary Trade Terms, the Debtor may, in its sole discretion, (a) declare that any payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtor may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations); (b) declare that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim to the Debtor without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount as so to restore the Debtor and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made; and/or (c) if there exists an outstanding postpetition balance due from the Debtor to such Critical Vendor, recharacterize and apply any payment of a Critical Vendor Claim to such outstanding postpetition balance and such Critical Vendor shall be required to repay to the Debtor such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

2

5.      Termination and Reinstatement.  All Vendor Agreements will terminate upon entry of an order converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code or upon the occurrence of the effective date of any chapter 11 plan of reorganization or liquidation of the Debtor.  In addition, if a Critical Vendor breaches its Vendor Agreement, the Debtor may, in its sole discretion, declare that such Vendor Agreement has terminated.  To the extent a Vendor Agreement is terminated on account of breach of the terms or conditions thereof by a Critical Vendor, such terminated Vendor Agreement may nevertheless be reinstated as the result of one or more of the following: (a) after notice and a hearing (following a motion filed by the applicable Critical Vendor), the Bankruptcy Court reverses the Debtor's decision to terminate the Vendor Agreement for good cause shown that the Debtor's determination was materially incorrect; (b) the Critical Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Vendor Agreement; or (c) the Debtor, in its sole discretion, reaches a commercially acceptable agreement with the breaching party.

6.      Effect of Acceptance.  Any party who accepts a payment from the Debtor on account of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall be deemed to have agreed to the terms and provisions of the Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims, of whatever type, kind, or priority, against the Debtor, its property and estate, its members, officers and employees up to the amount paid.

7.      Reservation of Rights.  Nothing contained herein, in the Order, or as a result of any payment made pursuant thereto is intended to or should be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (c) an agreement or obligation to pay any claims; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an admission as to the validity of any liens satisfied pursuant to the Motion; or (f) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  The Debtor expressly reserves the right to contest any demand for payment made with respect to Critical Vendor Claims pursuant to the Bankruptcy Code, any order of the Bankruptcy Court, or applicable non-bankruptcy law.

*[Remainder of page intentionally left blank]*

Dated: _____, 2021
   New York, NY

         **MORGAN, LEWIS & BOCKIUS LLP**

         By: _____
         Craig A. Wolfe
         Jason R. Alderson
         T. Charlie Liu
         David K. Shim
         101 Park Avenue
         New York, NY 10178
         Telephone: (212) 309-6000
         Facsimile:  (212) 309-6001
         craig.wolfe@morganlewis.com
         jason.alderson@morganlewis.com
         charlie.liu@morganlewis.com
         david.shim@morganlewis.com

         *Proposed Counsel for Debtor and Debtor-in-Possession*

## **EXHIBIT 1**

**Proposed Form of Vendor Agreement**

# VENDOR AGREEMENT

The Debtor (as defined below) and [  ] ("Vendor") hereby enter into the following vendor agreement (this "Vendor Agreement") dated as of this [ ], 2021.

## Recitals

WHEREAS on February 17, 2021 (the "Petition Date"), Solstice Marketing Concepts LLC (the "Debtor") filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

WHEREAS on February__, 2021, the Court entered the *Interim Order (I) Authorizing the Debtor to Pay Certain Prepetition Obligations to Critical Vendors, and (II) Granting Related Relief* [Docket No.___] (the "Critical Vendor Order"), authorizing the Debtor, under certain conditions, to pay the prepetition claims of certain vendors, including Vendor, subject to the terms and conditions set forth therein.

WHEREAS pursuant to the Critical Vendor Order, to receive payment on account of prepetition claims, each Critical Vendor (as defined in the Critical Vendor Order) must agree to continue to supply goods or services to the Debtor on "Customary Trade Terms." As used herein and in the Critical Vendor Order, "Customary Trade Terms" are trade terms at least as favorable to the Debtor as those terms governing practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs) within the twelve (12) months prior to the Petition Date, or such other trade terms that are acceptable to the Debtor in its sole discretion.

WHEREAS the Debtor and Vendor (collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims Vendor may hold against the Debtor.

## Agreement

1.    The Parties hereby agree that Vendor is a "Critical Vendor" (as defined in the Critical Vendor Order).

2.    The balance of Vendor's aggregate prepetition claim(s) against the Debtor is $[_____] (the "Agreed Critical Vendor Claim").

3.    Following execution of this Vendor Agreement, the Debtor will pay Vendor $[ ] (the "Payment Amount") in [partial] satisfaction of the Agreed Critical Vendor Claim. The Payment Amount will be paid pursuant to the Customary Trade Terms set forth below, and will be applied to any invoices previously received by the Debtor on account of the Agreed Critical Vendor Claim.

4.    The Parties hereby agree that Vendor delivered to the Debtor, and the Debtor received, goods valued at $[ ] within twenty (20) days before the Petition Date, for which Vendor did not receive payment (the "Agreed 503(b)(9) Claim"). $[_____] of the Payment Amount will be applied toward the Agreed 503(b)(9) Claim.

5.    For a period from the date this Vendor Agreement is executed until the earlier of (a) the effective date of a chapter 11 plan of reorganization of the Debtor and (b) one (1) years from the date of this Vendor Agreement, Vendor shall supply goods [**and/or**] services to the Debtor based on the following Customary Trade Terms:

6.    The Parties further agree, acknowledge and represent that:

2

a)      the Parties have reviewed the terms and provisions of the Critical Vendor Order and consent to be bound by such terms and that this Vendor Agreement is expressly subject to the Critical Vendor Order;

b)      any payments made on account of the Agreed Critical Vendor Claim shall be subject to the terms and conditions of the Critical Vendor Order, including any orders of the Court granting the relief requested in the Critical Vendor Order on a final basis, as applicable;

c)      if Vendor refuses to supply goods or services to the Debtor as provided herein or otherwise fails to perform any of its obligations hereunder, the Debtor may exercise all rights and remedies available under the Critical Vendor Order, the Bankruptcy Code, or applicable law;

d)      Vendor will not separately seek payment for any claims pursuant to section 503(b)(9) of the Bankruptcy Code or other similar claims outside of the terms of the Critical Vendor Order or this Vendor Agreement unless Vendor's participation in the vendor payment program authorized by the Critical Vendor Order is terminated;

e)      in consideration for receiving the Payment Amount, Vendor shall not file or otherwise assert against the Debtor, its estate, or any other person or entity, or any of its respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which the lien is asserted) related to any remaining prepetition amounts allegedly owed to Vendor by the Debtor arising from agreements entered into before the Petition Date. Furthermore, if Vendor has taken steps to file or assert a lien before entering into this Vendor Agreement, Vendor agrees to take all necessary steps to remove the lien as soon as possible at its sole cost and expense;

f)      if Vendor fails to comply with the terms and provisions of this Vendor Agreement, the Debtor may, in its sole discretion, and without further order of the Bankruptcy Court, (i) declare that any payment of the Payment Amount is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtor may recover in cash or in goods from Vendor (including by setoff against postpetition obligations); (ii) declare that Vendor shall immediately return the Payment Amount to the Debtor without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and Vendor's claim shall be reinstated to such amount as so to restore the Debtor and Vendor to their original positions as if the Vendor Agreement had never been entered into and the Payment Amount had not been paid; and/or (iii) if there exists an outstanding postpetition balance due from the Debtor to Vendors, the Debtor may elect to recharacterize and apply the Payment Amount to such outstanding postpetition balance and Vendor shall be required to repay to the Debtor such paid amounts that exceed the postpetition

obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise;

g)    if Vendor fails to comply with the terms and provisions of this Vendor Agreement, the Debtor may, in its sole discretion, declare that such Vendor Agreement has terminated; provided that the Vendor Agreement may be reinstated if: (i) after notice and a hearing (following a motion filed by the respective Critical Vendor), the Bankruptcy Court reverses the Debtor's decision to terminate the Vendor Agreement for good cause shown that the Debtor's determination was materially incorrect; (ii) the Critical Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Vendor Agreement; or (iii) the Debtor, in its sole discretion, reach a commercially acceptable agreement with the breaching party; and

h)    it is further agreed the Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute arising under or in connection with this Vendor Agreement.

7.    Subject to the requirements of the Bankruptcy Code, further orders of the Court, or applicable law, and unless it otherwise becomes public without a breach of this Vendor Agreement, Vendor agrees to hold in confidence and not disclose to any party: (a) any and all payments made by the Debtor pursuant to this Vendor Agreement; (b) the terms of payment set forth herein; and (c) the Customary Trade Terms (collectively, the "Confidential Information"); provided that if any party seeks to compel Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Vendor intends to disclose any or all of the Confidential Information, Vendor shall immediately provide the Debtor with prompt written notice so that the Debtor may seek an injunction, protective order or any other available remedy to prevent such disclosure; provided, further, that if such remedy is not obtained, Vendor shall furnish only such information as Vendor is legally required to provide.

8.    The undersigned hereby represent and warrant that: (a) they have full authority to execute this Vendor Agreement on behalf of the respective Parties; (b) the respective Parties have

full knowledge of, and have consented to, this Vendor Agreement; and (c) they are fully authorized to bind the Party to all of the terms and conditions of this Vendor Agreement.

9.      This Vendor Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Vendor Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.

10.     This Vendor Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

**AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE**:

Solstice Marketing Concepts LLC                    [Vendor]


_____                    _____
Name:                                              Name:
Title:                                             Title: