**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SOLSTICE MARKETING CONCEPTS LLC, | Case No. 21-10306 (MG) |
| Debtor.[1] | |

## FINAL ORDER (I) AUTHORIZING DEBTOR
## TO OBTAIN POSTPETITION FINANCING
## AND (II) GRANTING RELATED RELIEF

This matter having come before the Court upon the motion (the "**DIP Motion**") by

Solstice Marketing Concepts LLC, a Delaware limited liability company, as a debtor and debtor

in possession (the "**Borrower**" or the "**Debtor**") in the above-captioned chapter 11 case (the

"**Case**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507

of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the

Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), seeking entry

of a final order (this "**Final Order**") *inter alia*:

> (i)     authorizing the Debtor to obtain a secured, superpriority postpetition
> financing (the "**DIP Facility**"), consisting of a senior secured super-priority
> asset-based revolving credit facility, on the terms and conditions set forth
> in that certain Summary of Indicative Terms and Conditions annexed as
> **Exhibit 1** to the Interim Order (as the same may be amended, supplemented,
> waived, extended, restated, or otherwise modified from time to time or to
> the extent any credit agreement is executed and delivered, as superseded by
> such credit agreement, the "**DIP Credit Agreement**") by and among the
> Debtor, the Lenders party thereto (the "**DIP Lenders**" and each a "**DIP
> Lender**"), and Second Avenue Capital Partners LLC, as Administrative

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is:
Solstice Marketing Concepts LLC (4579).

Agent and Collateral Agent (the "**DIP Agent**") for the DIP Lenders in an aggregate principal amount (subject to availability) of up to $6,500,000 in revolving loan commitments (such loans outstanding under any of the DIP Loan Documents from time to time, collectively, the "**DIP Loans**");

(ii)     authorizing the Debtor to execute and deliver the DIP Credit Agreement and all other related documents and agreements, including (without limitation) this Final Order, security agreements, deposit account control agreements, pledge agreements, guaranties and promissory notes (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;[2]

(iii)    granting allowed superpriority administrative expense claim status in the Case and any Successor Case (as defined herein) to all obligations owing under the DIP Credit Agreement and the other DIP Loan Documents to the DIP Agent and the DIP Lenders (collectively, and including all "DIP ABL Facility Obligations" as described in the DIP Credit Agreement, the "**DIP Obligations**"), subject to the priorities set forth herein;

(iv)    authorizing the Debtor to use, in accordance with the Approved DIP Budget (as defined below), "**Cash Collateral**," as defined in section 363(a) of the Bankruptcy Code, that the Debtor is holding or may obtain, pursuant to sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004;

(v)     granting to the DIP Agent, for the benefit of the DIP Lenders, automatically perfected, priming, first-priority security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting Cash Collateral), which liens shall be subject to the priorities set forth herein;

(vi)    authorizing and directing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, commitment or unused line fees, closing fees, arrangement fees, maintenance fees and exit fees, the reasonable fees and disbursements of the DIP Agent's and DIP Lenders' attorneys, advisers, accountants, and other consultants, and all related expenses of the DIP Agent and DIP Lenders, all to the extent provided by and in accordance with the terms of the respective DIP Loan Documents and this Final Order;

(vii)   modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order; and

---

[2]  Capitalized terms used but not defined have the meanings given to them in the DIP Loan Documents or the DIP Motion.

(viii)    granting related relief.

The interim hearing on the DIP Motion having been held by the Court on February 25, 2021 (the "**Interim Hearing**"); and upon the record made by the Debtor at the Interim Hearing, including the DIP Motion, the First Day Declaration, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the final hearing held on the DIP Motion (the "**Final Hearing**"); and the Court having entered, after the Interim Hearing, that certain *Interim Order (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Scheduling a Final Hearing; and (III) Granting Related* Relief [Docket No. 44] (the "**Interim Order**"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014 and Local Bankruptcy Rule 4001-2; and the Final Hearing to consider the final relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the final relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the final relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for the continued operation of the Debtor's businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE SUBMISSION OF THE FIRST DAY DECLARATION AND THE RECORD ESTABLISHED AT THE FINAL HEARING BY THE DEBTOR, INCLUDING THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     *Petition Date*.  On February 17, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 (Subchapter V) of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") commencing the Case.

B.     *Debtor in Possession*.  The Debtor is continuing in the management and operation of its businesses and properties as debtor in possession pursuant to sections 1107 and 1108 and section 1185 of the Bankruptcy Code.

C.     *Jurisdiction and Venue*.  The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012, over these proceedings and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     *Subchapter V*.  The Office of the United States Trustee (the "**U.S. Trustee**") has appointed a trustee under section 1183 of the Bankruptcy Code (a "**Statutory Trustee**").  No official committee shall be appointed in the Case.

E.     [Reserved].

F.     *Findings Regarding Corporate Authority*.  The Debtor has all requisite power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

G.     *Findings Regarding the Postpetition Financing*.

(i)     *Request for Postpetition Financing*.  The Debtor seeks final approval to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, and (b) use Cash Collateral on the terms described herein to administer its Case and fund its operations.

(ii)    *Need for Postpetition Financing and Use of Cash Collateral.*  The DIP Facility is a "new money" loan, as neither the DIP Agent nor the DIP Lenders are existing creditors of the Debtor.  The Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtor to continue operations and to administer and preserve the value of its estate.  The ability of the Debtor to finance its operations, confirm a plan of reorganization, maintain business relationships, pay its employees, protect the value of its assets and otherwise finance its operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, and its estate, employees, creditors and equity holders, and the possibility for a successful administration of this Case.  The Debtor does not have sufficient available sources of working capital and financing to operate its businesses, confirm a plan of reorganization or to maintain its properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral. In the absence of the DIP Facility, it is likely the Debtor will not be able to continue as a going concern.

(iii)    *No Credit Available on More Favorable Terms.*  Given its current financial condition, financing arrangements, and capital structure, and the continuing crisis facing the retail industry as a result of the COVID-19 pandemic, the Debtor is unable to obtain financing from sources other than the DIP Agent and DIP Lenders on terms more favorable than the DIP Facility. Notwithstanding its efforts with the assistance of its advisors, the Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor also has been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise

subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of the DIP Lenders, (1) perfected security interests in and liens on (each as provided herein) all of the Debtor's existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Final Order.

(iv) *Use of Proceeds of the DIP Facility*. As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent and DIP Lenders require, and the Debtor has agreed, that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the budget (a copy of which is attached as **Exhibit 2** of the Interim Order), as the same may be modified from time to time consistent with the terms of the DIP Loan Documents and this Final Order, the "**Approved DIP Budget**"), and subject to such variances as may be permitted thereby, solely for (i) post-petition operating expenses and other working capital, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Case, including professional fees to the extent permitted by the DIP Loan Documents and this Final Order, and (iv) as otherwise permitted under the DIP Loan Documents.

(v) *Application of Proceeds of DIP Collateral*. As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtor, the DIP Agent and DIP Lenders have agreed that the proceeds of DIP Collateral (as defined herein) shall be applied in accordance with paragraph 16 of this Final Order.

H. *Section 506(c)*. In light of (i) the DIP Agent's and DIP Lenders' agreement to subordinate its liens and superpriority claims, as applicable, to the Carve Out (as defined herein), and (ii) the payment of expenses as set forth in the Approved DIP Budget, in accordance with and

subject to the terms and conditions of this Final Order and the DIP Loan Documents, the DIP Agent and DIP Lenders are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I. *Good Faith of the DIP Agent and DIP Lenders*.

(i) *Willingness to Provide Financing*.  The DIP Agent and DIP Lenders have agreed to provide financing to the Debtor subject to: (a) the entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents; (c) satisfaction of the closing conditions set forth in the DIP Loan Documents; and (d) entry of each of the following findings by the Court: that such financing is essential to the Debtor's estate, that the DIP Agent and DIP Lenders are extending credit to the Debtor pursuant to the DIP Loan Documents in good faith, that the DIP Agent and DIP Lenders have acted in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Final Order and the DIP Loan Documents will have the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.

(ii) *Business Judgment and Good Faith Pursuant to Sections 363(m) and 364(e)*.  The extension of credit under the DIP Facility reflects the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtor, the DIP Agent and the DIP Lenders, with the assistance and counsel of its respective advisors, and the DIP Agent and DIP Lenders have acted in good faith.  The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall

be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code, and the DIP Agent and DIP Lenders are therefore entitled to the protection and benefits of sections 363(m) and 364(e) of the Bankruptcy Code and this Final Order.

J.      *Notice*.  Notice of the Final Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the parties included on the Debtor's consolidated list of twenty (20) largest unsecured creditors; (iv) counsel to any other lienholders of record; (v) G.S.I. Corporation ("**GSI**") and (vi) those parties who have filed a notice of appearance and request for service of pleadings in the Case pursuant to Bankruptcy Rule 2002.  The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Final Order, and no other or further notice is or shall be required.

K.      GSI is an affiliate of the Debtor and asserts a security interest in certain of the Debtor's assets.  GSI has consented to the entry of this Final Order, including the grant to the DIP Agent of the priming DIP Liens set forth herein. Further, GSI, the Debtor and the DIP Agent have entered into a Subordination Agreement dated as of February 25, 2021 (the "**Subordination Agreement**"), a copy of which is annexed hereto as part of **Exhibit 2**. The GSI Subordination Agreement is a "subordination agreement" within the meaning of section 510(a) of the Bankruptcy Code and shall be enforceable in the Case and any Successor Case to the same extent as enforceable under applicable nonbankruptcy law.

L.      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      <u>DIP Financing Approved on a Final Basis</u>.  The DIP Motion is granted as set forth herein on a final basis, the DIP Financing is authorized and approved on a final basis, and the use of Cash Collateral on a final basis is authorized, in each case subject to the terms and conditions set forth in the DIP Loan Documents and this Final Order.

2.      <u>Objections Overruled</u>.  All objections to approval of the DIP Financing on a final basis, to the extent not withdrawn, waived, settled, or resolved, are hereby overruled.

**<u>DIP Facility Authorization</u>**

3.      <u>Authorization of the DIP Financing and DIP Loan Documents</u>.  The Debtor is expressly and immediately authorized and empowered (i) to execute and deliver the DIP Loan Documents, (ii) to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order, the DIP Loan Documents and the Approved DIP Budget,  and (iii) to deliver all instruments and documents that may be necessary or required for performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Loan Documents. The Debtor is hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due and without need to obtain further Court approval, including, without limitation, commitment or unused line fees, arrangement fees, closing fees, monitoring fees and exit fees, the reasonable fees and disbursements of the DIP Agent's and the DIP Lenders' attorneys, advisers, accountants, and other consultants and professional persons, all to the extent provided in the DIP Loan Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be

deposited and applied as required by this Final Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with its terms.

4. <u>Final Authorization to Borrow</u>. Upon the entry of this Final Order (as defined in the DIP Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility, and this Final Order, and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to request extensions of revolving credit under the DIP Facility sufficient to conduct ongoing business operations up to an aggregate principal amount of $6,500,000.00 (comprised of actual funds disbursed) at any one time outstanding (the "**DIP Financing**").

5. <u>DIP Obligations</u>. The DIP Loan Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Case (collectively, any "**Successor Case**"). Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness, indemnities or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Agent and DIP Lenders under the DIP Loan Documents or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses, indemnities and other amounts owed pursuant to the DIP Loan Documents, and shall be obligations of the Debtor in all respects. Without limiting the foregoing, the DIP Obligations shall also include cash management exposure to the extent described in, or secured by, the DIP Loan Documents. The DIP Obligations shall be due and payable, without notice or

10

demand, and the use of Cash Collateral shall automatically cease on the Termination Declaration Date, except as provided in paragraph 21 herein. No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Loan Documents (including any DIP Obligations or DIP Liens) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

6.      DIP Liens and DIP Collateral.

(a)      Effective immediately upon the entry of this Final Order, pursuant to sections 361, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent (for itself and the ratable benefit of the DIP Lenders) is hereby granted, continuing valid, binding, enforceable, first-priority, non-avoidable, priming and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**DIP Liens**") any and all presently owned and hereafter acquired assets and real and personal property of the Debtor, including, without limitation, the following (the "**DIP Collateral**"):

(i)      all Accounts[3];

(ii)      all Goods, including Equipment, Inventory and Fixtures;

_____
[3] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents. All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(iii)     all Documents, Instruments and Chattel Paper;

(iv)     all Letters of Credit and Letter-of-Credit Rights;

(v)     all Securities Collateral;

(vi)     all Investment Property;

(vii)     all Intellectual Property Assets;

(viii)     all Commercial Tort Claims;

(ix)     all General Intangibles (including, without limitation, all Payment Intangibles);

(x)     all Deposit Accounts (including, without limitation, the Concentration Account);

(xi)     all Supporting Obligations;

(xii)     all money, cash or cash equivalents;

(xiii)     all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Agent or at any other depository or other institution from or for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiv)     all proceeds of leases of real property and all owned real property;[4]

(xv)     all claims and causes of action and the proceeds thereof to avoid a transfer of property (or an interest in property) pursuant to section 549 of the Bankruptcy Code;

(xvi)     [Reserved].;

---

[4] For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtor's leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

(xvii) to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of the Debtor;

(xviii) all books, records, and information relating to any of the foregoing and/or to the operation of the Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and

(xix) to the extent not otherwise included or specifically excluded, all other personal property of the Debtor, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

(b) Notwithstanding the foregoing in this Paragraph 6, the DIP Liens shall not encumber (a) any tangible property located at 665 Fifth Avenue, New York, New York 10022 that the Debtor has abandoned, or (b) any claims and causes of action, and any proceeds thereof, to avoid a prepetition transfer of property (or an interest in property) or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (collectively, the "**Avoidance Actions**"). For the avoidance of doubt, to the extent any lien is avoided pursuant to an Avoidance Action and is preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code, such lien shall be junior in priority to the DIP Liens.

7.      <u>DIP Lien Priority</u>.

(a)      *DIP Liens*.  Upon entry of the Final Order, the DIP Liens shall be junior only to the Carve Out, and shall otherwise be senior in priority and superior to any other security interest, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral. Without limiting the foregoing, the DIP Liens shall be senior in all respects to any security interest or lien asserted by GSI.

(b)      Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Case.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to any case under Chapter 7 of the Bankruptcy Code (or in any Successor Case), and/or upon the dismissal of the Case or any Successor Case.  The DIP Liens shall not be subject to challenge under sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

8.      <u>DIP Superpriority Claim</u>.

(a)      *DIP Agent Superpriority Claim*.  Upon entry of this Final Order, the DIP Agent (for itself and the ratable benefit of the DIP Lenders) is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Case (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the DIP Liens, the Avoidance Actions and the Carve Out, shall be senior in all respects to any security interest, lien or claim asserted by GSI and shall otherwise have priority over any and all administrative expenses

of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code.

(b) *Priority of DIP Superpriority Claim.* Effective upon entry of this Final Order, the DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, subject only to the payment in full in cash of the DIP Obligations, the Avoidance Actions and the Carve Out.

9. No Obligation to Extend Credit. The DIP Agent and the DIP Lenders shall not have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents and this Final Order have been satisfied in full or waived by the DIP Agent and the DIP Lenders in accordance with the terms of the DIP Credit Agreement.

10. Use of DIP Facility Proceeds. From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Loan Documents and the Approved DIP Budget and shall be subject at all times to compliance with the Approved DIP Budget, subject to any variances as may be permitted under the DIP Credit Agreement.

**Authorization to Use Cash Collateral**

11. Authorization to Use Cash Collateral. Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in accordance with the Approved DIP Budget, and subject to such variances as may permitted under the DIP Credit Agreement, the Debtor is authorized to use Cash Collateral until the Termination Declaration Date. Nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business (which shall be subject to further Orders of the Court), or the Debtor's use of

any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Loan Documents and in accordance with the Approved DIP Budget.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

12.     Amendments.  The DIP Loan Documents may from time to time be amended, modified or supplemented by the parties thereto without further Order of this Court and without notice or a hearing if such amendment, modification, or supplement is (A) non-material and (b) in accordance with the DIP Loan Documents.  In the case of a material amendment, modification, or supplement to the DIP Loan Documents that is adverse to the Debtor's estate, the Debtor shall provide notice (which may be provided through electronic mail or facsimile) to counsel to the Statutory Trustee and the U.S. Trustee (collectively, the "Notice Parties"), each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement.  If none of the Notice Parties indicates that it has an objection to the amendment, modification or supplement, the Debtor may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution.  If a Notice Party timely objects to such amendment, modification or supplement, and such objection is not consensually resolved by the Debtor, the DIP Agent, the DIP Lenders and the objecting Notice Party, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; provided, that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard.  Any material modification, amendment or supplement that becomes effective in accordance with this paragraph 12 shall be filed with the Court by the Debtor no later than three (3) business days after becoming effective (and may be filed with the Court by the DIP Agent if the Debtor fails to do so within such time period).

13.     Approved DIP Budget Maintenance.  The use of borrowings under the DIP Facility and the use of Cash Collateral shall be limited in accordance with the Approved DIP Budget, subject to the variances set forth in the DIP Credit Agreement.  The Approved DIP Budget and any modification to, or amendment or update of, the Approved DIP Budget shall be in form and substance acceptable to the DIP Agent and the DIP Lenders and approved by the DIP Agent and the DIP Lenders in their sole discretion.  The Debtor shall comply with and update the Approved DIP Budget from time to time in accordance with the DIP Loan Documents (provided that any update shall be in form and substance acceptable to the DIP Agent and the DIP Lenders and approved by the DIP Agent and the DIP Lenders in their sole discretion), but in any event not less than on a weekly basis (with delivery to the DIP Agent on or before Wednesday of each week (or such day as otherwise agreed to by the DIP Agent) and to the U.S. Trustee and the Statutory Trustee each week after delivery to the DIP Agent), and no such updated, modified, or supplemented budget shall be effective until so approved and once approved shall be deemed the "Approved DIP Budget".  Each budget delivered to the DIP Agent shall be accompanied by such supporting documentation as reasonably requested by the DIP Agent and shall be prepared in good faith based upon assumptions the Debtor believe to be reasonable.

14.     Modification of Automatic Stay.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Debtor to grant the DIP Liens and the DIP Superpriority Claim; (b) permit the Debtor to perform such acts as the DIP Agent may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the DIP Agent and DIP Lenders under the DIP Loan Documents, the DIP Facility, and this Final Order, as applicable; (d) authorize the

Debtor to pay, and the DIP Agent and the DIP Lenders to retain and apply, payments made in accordance with the terms of this Final Order, and (e) permit the DIP Agent and DIP Lenders to accept and enforce, in accordance with its terms, the Parent Guaranty (as defined in paragraph 47 of this Final Order).

15.   <u>Perfection of DIP Liens</u>.   This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Agent to the priorities granted herein.   Notwithstanding the foregoing, the DIP Agent is authorized to file, as the DIP Agent in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create, perfect or enforce the DIP Liens.   The Debtor is authorized to execute and deliver, promptly upon demand to the DIP Agent, all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent may reasonably request.   The DIP Agent, in its sole discretion, may file a photocopy of this Final Order as a

financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

16.     <u>Application of Proceeds of DIP Collateral</u>.  As a condition to the entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, subject to the Carve Out, the Debtor has agreed that the proceeds of the DIP Collateral, and other payments received by the DIP Agent and the DIP Lenders, including assets sold in the ordinary course, liquidated pursuant to any agreement with a liquidator, or otherwise, shall be applied as provided in the DIP Credit Agreement, or, to the extent the DIP Credit Agreement does not direct the application of such amounts, as follows: *first*, to payment of the costs and expenses of the DIP Agent and DIP Lenders, including expenses payable and reimbursable by the Debtor under the DIP Credit Agreement and the other DIP Loan Documents; *second*, to payment of fees and interest with respect to the DIP Obligations, *third*, to payment of all other DIP Obligations in accordance with the DIP Loan Documents until all DIP Obligations have been paid in full in cash, and *fourth*, to the Debtor's operating account, or for the account of and paid to whomever may be lawfully entitled thereto. As between the DIP Agent and the DIP Lenders, nothing provided herein shall be deemed to modify the allocation of the proceeds of DIP Collateral set forth in the DIP Loan Documents.

17.     <u>Proceeds of Subsequent Financing</u>.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Case or any Successor Case shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full, in cash, of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, including

subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtor and its estate, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 16 herein.

18.    _Maintenance of DIP Collateral_.    Until the payment in full in cash of all DIP Obligations, and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, as provided therein, the Debtor shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system as approved by the Court.

19.    _Disposition of DIP Collateral; Rights of DIP Agent and DIP Lenders_.    Unless (i) the DIP Agent and the DIP Lenders have provided their prior written consent, (ii) all DIP Obligations have been indefeasibly paid in full, in cash, and all obligations to extend credit under the DIP Facility have terminated or (iii) otherwise authorized by the Court after notice to the DIP Agent and the DIP Lenders:

(a)    The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral outside the ordinary course of business except as permitted by the DIP Loan Documents.  Nothing provided herein shall limit the right of the DIP Agent or the DIP Lenders to object to any proposed disposition of the DIP Collateral;

(b)    There shall not be entered in the Case or any Successor Case any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case that is superior to or _pari passu_ with the DIP Liens, or the DIP Superpriority Claim, except as expressly set forth in this Final

Order or the DIP Loan Documents; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Loan Documents and this Final Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness or consignment arrangement) to any creditor of the Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of the DIP Agent's or DIP Lenders' rights under this Final Order or the DIP Loan Documents; and

(c)     The Debtor (and/or its professional advisors in the case of clauses (ii) through (iv) below) shall (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents (and subject to the applicable grace periods set forth therein); (ii) cooperate with, consult with, and provide to the DIP Agent and the DIP Lenders all such information and documents that the Debtor is obligated (including upon reasonable request by the DIP Agent or the DIP Lenders) to provide under the DIP Loan Documents or the provisions of this Final Order; (iii) upon reasonable advance notice, permit the DIP Agent, the DIP Lenders and their advisors to visit and inspect any of the Debtor's respective properties, to examine and make abstracts or copies from any of its books and records, to tour the Debtor's business premises and other properties, and to discuss, and provide advice with respect to, its affairs, finances, properties, business operations, and accounts with its officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Loan Documents; (iv) permit the DIP Agent, the DIP Lenders and their advisors to consult with the Debtor's management and advisors on matters concerning the Debtor's businesses, financial condition, operations, and assets in accordance with the DIP Loan Documents; and (v) upon reasonable advance notice, permit the DIP Agent to conduct, at the Debtor's cost and expense,

field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable intervals in respect of any or all of the DIP Collateral in accordance with, and to the extent set forth in, the DIP Loan Documents.

20. <u>Credit Bidding</u>. In connection with any sale process commenced by the Debtor or otherwise authorized by the Court, the DIP Agent may credit bid some or all of the claims of the DIP Agent and the DIP Lenders for the DIP Collateral (each a "<u>Credit Bid</u>") pursuant to section 363(k) and/or section 1129 of the Bankruptcy Code. The DIP Agent shall be considered a "qualified bidder" with respect to its rights to acquire all or any of the assets by Credit Bid.

21. <u>Termination Declaration Date</u>. On the Termination Declaration Date, at the option of the DIP Agent: (a) all applicable DIP Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Facility will terminate, other than as required in paragraph 29 with respect to the Carve Out, all treasury and cash management, hedging obligations and bank product obligations constituting DIP Obligations shall be cash collateralized in a manner and amount acceptable to the DIP Agent, and none of such cash collateral shall be subject to or subordinate to the Carve Out; (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtor may use Cash Collateral to pay payroll obligations (other than severance), make remittances of trust fund taxes collected by the Debtor during the Remedies Notice Period, and for other expenses critical to the preservation of the Debtor and its estate, as agreed by the DIP Agent in its sole discretion; and (c) otherwise exercise rights and remedies under the DIP Loan Documents in accordance with this Final Order (including paragraph 23 hereof).

22. <u>Events of Default</u>. The occurrence of an "event of default" under the DIP Credit Agreement (unless the DIP Agent, in its sole discretion, elect to waive such Event of Default in

accordance with the terms of the DIP Credit Agreement) shall constitute an event of default under this Final Order (each, an "**Event of Default**").[5]

23.     Rights and Remedies Upon Event of Default.

(a)     *DIP Facility Termination.*  Immediately upon the occurrence and during the continuance of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, the DIP Loan Documents and the Remedies Notice Period, the DIP Agent may, in its sole discretion, (a) declare any or all of the following (any such declaration shall be referred to herein as a "**Termination Declaration**"): (i) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice (as defined herein) to the Debtor and its counsel, the U.S. Trustee, and the Statutory Trustee or (b) send a reservation of rights notice to the Debtor, which notice may advise the Debtor that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent and the DIP Lenders, and/or that default interest shall accrue as provided for in the DIP Loan Agreement.  With respect to the DIP Collateral, following the Termination Declaration but subject to the Remedies Notice Period, the DIP Agent and the DIP Lenders may exercise all rights and

---

[5] Events of Default under the DIP Credit Agreement are specified in the "Events of Default" section of the DIP Credit Agreement, which is attached hereto as Exhibit 1.   The Events of Default section begins on page 13 of the DIP Credit Agreement and ends on page 14.

remedies available to them under the DIP Loan Documents or applicable law against the DIP Collateral. Without limiting the foregoing, the DIP Agent and the DIP Lenders may, subject to the Remedies Notice Period, (i) upon written notice to the landlord of any leased premises that an Event of Default or the Termination Declaration Date has occurred and is continuing, and subject to the applicable notice provisions, if any, in this Final Order and any separate applicable agreement by and between such landlord, enter onto the premises of the Debtor for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from the landlords thereunder;[6] and/or (ii) exercise any rights and remedies provided to DIP Agent or the DIP Lenders under the DIP Loan Documents or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Final Order. Following the termination of the Remedies Notice Period, the DIP Agent and the DIP Lenders may require the Debtor to seek authority from the Court to retain a professional acceptable to the DIP Agent and the DIP Lenders for the purpose of conducting a liquidation or "going out of business" sale and/or the orderly liquidation of the DIP Collateral and, if Debtor refuses to seek such authority, the DIP Agent and the DIP Lenders shall be entitled to seek such authority directly.

(b) *Notice of Termination*. Any Termination Declaration shall be given by facsimile (or other electronic means, including electronic mail) to counsel to the Debtor, the Statutory Trustee, and the U.S. Trustee. Notice to the U.S. Trustee shall be given by electronic

---

[6]    Notwithstanding anything in this paragraph to the contrary, subject to (and without waiver of) the rights of the DIP Agent and/or the DIP Lenders under applicable non-bankruptcy law, the DIP Agent and/or the DIP Lenders can only enter upon a leased premises after an Event of Default and expiration of the Remedies Notice Period in accordance with (i) a separate agreement with the landlord at the applicable leased premises, or (ii) upon entry of an order of this Court obtained by motion of the DIP Agent and/or the applicable DIP Lenders on such notice of not less than five (5) business days to the landlord as shall be required by this Court.

mail to the following addresses: susan.arbeit@usdoj.gov. Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that five (5) business days after the Termination Declaration Date (the "**Remedies Notice Period**"), the DIP Agent and the DIP Lenders shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents and this Final Order and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens, subject in each case to the Avoidance Actions and the Carve Out. During the Remedies Notice Period, the Debtor shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing; provided, that in the event the Debtor seeks such an emergency hearing and the Court is unable to schedule such a hearing during the five (5) business day period described above, the Remedies Notice Period shall be tolled until the date on which the Court enters an order with respect to whether an Event of Default has occurred and/or is continuing. Unless the Court determines otherwise, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Agent and the DIP Lenders shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement, the DIP Loan Documents and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Agent and the DIP Lenders with respect thereto pursuant to the DIP Credit Agreement, the other DIP Loan Documents, or this Final Order.

24. <u>Good Faith Under Sections 363 and 364 of the Bankruptcy Code; No Modification or Stay of this Final Order</u>. Each of the DIP Agent and the DIP Lenders has acted in good faith in

connection with this Final Order and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with sections 363(m) and 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of the Court, or any other court, the DIP Agent and the DIP Lenders shall be and hereby are entitled to the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made, or lien, claim or priority authorized or created hereby, provided that this Final Order was not stayed by court order after due notice had been given to the DIP Agent at the time the advances were made or the liens, claims or priorities were authorized and/or created. Any liens or claims granted to the DIP Agent and the DIP Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein, provided that this Final Order was not stayed by court order after due notice had been given to the DIP Agent and each of the DIP Lenders at the time the advances were made or the liens, claims or priorities were authorized and/or created.

25. <u>DIP and Other Expenses</u>. Upon compliance with the procedures set forth in this paragraph 25, the Debtor is authorized and directed to pay all reasonable and documented out-of-pocket expenses of the DIP Agent and the DIP Lenders in connection with the DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in the DIP Loan Documents, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses, upon the Debtor's

receipt of summary copies of invoices for the payment thereof. Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the DIP Agent and the DIP Lenders shall not be required to comply with the U.S. Trustee fee guidelines. Notwithstanding the foregoing, at the same time such summary copies of invoices (which shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed and categorized expenses incurred during the pendency of the Chapter 11 case, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) are delivered to the Debtor, the professionals for the DIP Agent and the DIP Lenders shall deliver a copy of their respective invoice summaries to the Statutory Trustee and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Debtor, the U.S. Trustee or the Statutory Trustee with respect to such invoice summaries within ten (10) days of the receipt thereof will be resolved by the Court or agreed among the parties. In the event of any objection that cannot otherwise be resolved consensually, the DIP Lenders shall have the right to request that the provisions of section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply to all or a portion of the materials relevant to the dispute. Pending such resolution, the undisputed portion of any such invoice summary will be paid promptly by the Debtor. Notwithstanding the foregoing, the Debtor is authorized and directed to pay on the Closing Date (as defined in the DIP Credit Agreement) all fees, costs and expenses of the DIP Agent and the DIP Lenders incurred on or prior to such date without the need for any

professional engaged by the DIP Agent or the DIP Lenders to first deliver a copy of its invoice as provided for herein.

26. <u>Indemnification</u>.

(a) The Debtor shall indemnify and hold harmless the DIP Agent and the DIP Lenders and each of their shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, or the DIP Facility or the transactions contemplated thereby and by this Final Order, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with this Case, any plan, or any action or inaction by the Debtor, in each case except to the extent resulting from such indemnified party's gross negligence, willful misconduct, fraud or bad faith as finally determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the exercise of discretionary rights granted under the DIP Facility by the DIP Agent or the DIP Lenders. In all such litigation, or the preparation therefor, the DIP Agent and/or the DIP Lenders, as applicable, shall be entitled to select their own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly advance and pay the reasonable fees and expenses of such counsel.

(b) Upon the earlier of the (i) payment in full in cash of the DIP Obligations and all bank product obligations having been cash collateralized in a manner and amount acceptable to the DIP Agent or (ii) conclusion of the Remedies Notice Period, the Debtor shall

deposit $100,000 into an indemnity account (the "Indemnity Account") subject to first priority liens of the DIP Agent, for the benefit of the DIP Lenders. The Indemnity Account shall be released and the funds applied in accordance with paragraph 16 of this Final Order upon the indefeasible payment in full, in cash of the DIP Obligations and all bank product obligations having been cash collateralized in a manner and amount acceptable to the DIP Agent, and the receipt by the DIP Agent and each of the DIP Lenders of releases from the Debtor and its estate, with respect to any claims arising out of or related to the DIP Loan Documents, acceptable to the DIP Agent and each of the DIP Lenders, each in their sole discretion.

27. <u>Proofs of Claim</u>.

(a) Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative claims) in the Case or any Successor Case shall not apply to the DIP Agent or DIP Lenders. Neither DIP Agent nor any DIP Lender will be required to file proofs of claim or requests for approval of administrative expenses in the Case or any Successor Case, and the provisions of this Final Order relating to the amount of the DIP Obligations and the DIP Superpriority Claim shall constitute timely filed proofs of claim and/or administrative expense requests.

28. <u>Rights of Access and Information</u>. Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Loan Documents, the Debtor shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent and DIP Lenders reasonable access to the Debtor's premises and its books and records in accordance with the DIP Loan Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtor authorizes its independent certified public accountants, financial advisors, investment

bankers and consultants to cooperate, consult with, and provide to the DIP Agent and the DIP Lenders all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtor.

29. Carve Out.

(a) *Carve Out*. As used in this Final Order, the "**Carve Out**" means, collectively, the following expenses: (i) all reasonable fees and expenses up to $50,000 incurred by the Statutory Trustee and all reasonable fees and expenses up to $50,000 incurred by a Chapter 7 trustee under section 726(b) of the Bankruptcy Code and (ii) upon the occurrence of any Event of Default and delivery of a Carve Out Trigger Notice (as defined below), all allowed and unpaid professional fees and expenses of the Debtor's case professionals retained by the Debtor by final order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under sections 327 or 1103(a) of the Bankruptcy Code (such professionals collectively in this clause (ii), the "**Case Professionals**"), to the extent such fees and expenses are allowed and payable pursuant to an order of the Court (which order has not been reversed, vacated or stayed) ("**Allowed Professional Fees**"), irrespective of allowance date and incurred prior to the Carve Out Trigger Notice, which amount under this clause (ii) shall not exceed an aggregate $650,000 consisting of the initial Carve Out in the amount of $500,000 (the "**Initial Case Professional Carve Out**"), plus the addition of the supplemental Carve Out in the amount of $150,000 subject to the terms and conditions of Paragraph 29(b) herein (the "**Supplemental Case Professional Carve Out**," and together with the Initial Case Professional Carve Out, the "**Case Professional Carve Out**"), less, (x) commencing with the week ending February 27, 2021, an aggregate amount per week limited to the amounts set forth in the Approved DIP Budget for the Case Professionals incurred prior to the delivery of a written notice by the DIP Agent to the Debtor

and its counsel, the Statutory Trustee and the U.S. Trustee, which notice may be delivered at any time by the DIP Agent (1) in connection with the repayment in full, in cash of the DIP Obligations and all letters of credit related thereto having been cancelled, backed, or cash collateralized in accordance with the terms thereof, and all bank product obligations having been cash collateralized in a manner and amount acceptable to the DIP Agent, or (2) at the option of the DIP Agent, in its sole discretion, following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice" and may, at the option of the DIP Agent, expressly state that no additional loans under the DIP Credit Agreement may be requested to fund the Carve Out (a "**Carve-Out Trigger Notice**"), solely to the extent that such amounts described in this clause (x) are actually funded into the Professional Fee Account referred to below, and which amount shall be funded into an IOLTA account with Morgan, Lewis & Bockius LLP maintained at Citicorp, N.A. in New York, New York (the "**Professional Fee Account**") on Wednesday of each week (or such other day of the week agreed to by the Debtor and the DIP Agent) in accordance with the Approved DIP Budget, provided, that (I) the Debtor has sufficient Excess Availability (as defined in the DIP Credit Agreement) on such date, (II) the Termination Declaration Date has not occurred; and (III) no Event of Default has occurred and is continuing.

(b)     *Availability of the Supplemental Case Professional Carve Out for Case Professionals*.  Notwithstanding anything to the contrary in this Final Order or in the DIP Credit Agreement, and for purposes of the Supplemental Case Professional Carve Out only, the Supplemental Case Professional Carve Out shall be added to the Case Professional Carve Out and made immediately available to fund the Professional Fee Account pursuant to Paragraphs 29(a)(ii) and 29(c)-(e) of this Final Order upon the indefeasible repayment on the effective date ("**Effective Date**") of the Debtor's Chapter 11 (Subchapter V) plan (the "**Chapter 11 Plan**") of the DIP

Obligations, exclusive of the Exit Fee as defined in the DIP Loan Documents (the "**Non-Exit Fee DIP Obligations**") as of such Effective Date (the "**Supplemental Case Professional Carve Out Trigger**"), *provided*, *however*, the Supplemental Case Professional Carve Out Trigger shall also be deemed to have immediately occurred in the event the DIP Facility is refinanced by an exit facility provided by Second Avenue Capital Partners LLC on the Effective Date of the Chapter 11 Plan in accordance with the DIP Credit Agreement. For the avoidance of doubt, the Supplemental Case Professional Carve Out shall at all times be junior to the Non-Exit Fee DIP Obligations until the indefeasible payment in full of the Non-Exit Fee DIP Loan Obligations.

(c)     *Professional Fee Account*.  No portion of the Carve Out, nor any Cash Collateral or proceeds of the DIP Collateral may be used in violation of this Final Order or any Final Order. Notwithstanding anything to the contrary contained in this Final Order, (A) until an Event of Default or the Termination Declaration Date has occurred, the Debtor shall be permitted to borrow under the DIP Credit Agreement on a weekly basis to fund the Professional Fee Account in the amounts contemplated under clause (x) of Paragraph 29(a) and Paragraph 29(b) above, subject to there being sufficient Excess Availability for such borrowings, (B) the Debtor shall be permitted to pay, from the Professional Fee Account, as and when the same may become due and payable, the Allowed Professional Fees of Case Professionals regardless of whether an Event of Default or the Termination Declaration Date has occurred, and (C) the aggregate amount of Allowed Professional Fees of Case Professionals paid by the Debtor prior to the delivery of a Carve-Out Trigger Notice from any amounts funded into the Professional Fee Account pursuant to clause (x) of Paragraph 29(a) and Paragraph 29(b) above (but not, for the avoidance of doubt, amounts paid from any retainers held by such Case Professionals) shall not exceed the amount of such Allowed Professional Fees set forth in the Approved DIP Budget and actually incurred up to

the date of the Carve Out Trigger Notice. None of the provisions of this Final Order or any DIP Loan Document shall prohibit or restrict the payment of the fees and expenses of any Case Professional from any retainers held by such Case Professional. Any amount of the Case Professional Carve Out remaining after the payment in full of all Allowed Professional Fees of Case Professionals pursuant to final fee applications and orders in the Case shall be returned to the DIP Agent, which amounts shall be applied to the DIP Obligations in the order and manner required by the DIP Loan Documents. The DIP Liens shall attach to the Professional Fee Account subject to the payment of the Carve Out.

(d)     *Delivery of Weekly Fee Statements*.  Not later than 5:00 p.m. Eastern time on Tuesday of each week starting with the second week following the Petition Date, each Case Professional shall deliver to the Debtor and the DIP Agent, a statement setting forth the amount and a description of the fees and expenses incurred during the preceding week by such professional Person (each such statement, a "**Weekly Statement**").   The Carve Out under Paragraph 29(a)(ii) above shall be limited to the Initial Case Professional Carve Out, as such may be augmented by the Supplemental Case Professional Carve Out pursuant to Paragraph 29(b) above, less the greater of (x) the aggregate unpaid amount of professional fees included in such Weekly Statements timely received by the DIP Agent prior to the Termination Declaration Date (as defined below), and (y) the aggregate unpaid amount of professional fees included in the Approved DIP Budget for the period prior to the Termination Declaration Date (such amount, the "**Professional Fee Carve Out Cap**").  For the avoidance of doubt, the DIP Agent shall at all times maintain a reserve in an amount not less than the sum of (i) the then outstanding amount of the Professional Fee Carve Out Cap (and such reserve shall include the Supplemental Case Professional Carve Out), *plus* (ii) the amounts contemplated under Paragraph 29(a)(i) above.

(e)     *Carve Out Reserves*.  On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtor with a copy to the Statutory Trustee (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall be deemed a draw request and notice of borrowing by the Debtor for DIP Loans under the DIP Credit Agreement in an amount equal to the sum of (x) the amounts set forth in Paragraph 29(a)(i), and (y) the then unpaid amounts of the Allowed Professional Fees up to the Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP Loans), and shall also constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable DIP Loans).  The Debtor shall deposit and hold such amounts in a segregated account at the DIP Agent in trust exclusively to pay such unpaid Allowed Professional Fees (the "**Carve Out Reserves**").  On the third business day following the Termination Declaration Date and the deemed requests for the making of DIP Loans as provided in this paragraph (e), notwithstanding anything in the DIP Credit Agreement to the contrary, including, without limitation, with respect to (1) the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, (2) the failure of the Debtor to satisfy any or all of the conditions precedent for the making of any DIP Loan under the DIP Credit Agreement, (3) any termination of the DIP Loan commitments following an Event of Default, or (4) the occurrence of the Maturity Date, each DIP Lender with an outstanding commitment shall make available to the DIP Agent such DIP Lender's *pro rata* share of such DIP Loans.  For the avoidance of doubt, the Carve Out Reserves shall constitute the primary source for payment of Allowed Professional Fees entitled to benefit from the Carve Out.

(f)     *No Direct Obligation to Pay Professional Fees.*  Except for funding the Professional Fee Account as provided herein, the DIP Agent and the DIP Lenders shall not be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Case or any Successor Case, except as necessary to fund the Carve Out.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent the DIP Lenders in any way to pay compensation to or to reimburse expenses of any Case Professional, to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement, or as consent to the allowance of any particular professional fees or expense of any Case Professional. Nothing in this Final Order or otherwise shall be construed to increase the Carve Out if actual Allowed Professional Fees of any Case Professional are higher in fact than the estimated fees and disbursements reflected in the Approved DIP Budget. For the avoidance of doubt, and except as provided in this Final Order, until such time as the DIP Obligations have been indefeasibly paid in full in cash or the DIP Facility is refinanced by an exit facility provided by Second Avenue Capital Partners LLC on the Effective Date of the Chapter 11 Plan, (x) any fees or disbursements of any Case Professional shall be paid solely from the Professional Fee Account and any retainer, as applicable and (y) no "success", "restructuring", "transaction" or similar fee shall be paid to the Debtor's investment banker or financial advisor.

(g)     *Payment of Carve Out*.  Upon the occurrence of the Termination Declaration Date, the DIP Obligations, the DIP Liens and the DIP Superpriority Claims shall be subject to the payment of the unfunded amount of the Carve Out.  The funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law. Upon funding of the Professional Fee Account in accordance

with the terms and conditions hereof, the DIP Agent and the DIP Lenders shall not have any further liability or responsibility with respect thereto.

30.     <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Carve Out</u>.  Unless otherwise ordered by the Court after notice to the DIP Agent and a hearing, or consented to by the DIP Agent and the DIP Lenders, the DIP Facility, the DIP Collateral, the Cash Collateral and the Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to or against the interests of the DIP Agent or the DIP Lenders or their rights and remedies under the DIP Loan Documents, or the Interim Order or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations, (iii) for monetary, injunctive or other affirmative relief against the DIP Agent, the DIP Lenders, or their respective collateral, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent or the DIP Lenders of any rights and remedies under the Interim Order or this Final Order, the DIP Loan Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent or the DIP Lenders upon any of the DIP Collateral; (b) to make any distribution under a plan of reorganization in any Chapter 11 Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor; (e) objecting to,

contesting, or interfering with, in any way, the DIP Agent's or the DIP Lenders' enforcement or realization upon any of the DIP Collateral, as applicable, once an Event of Default has occurred, except as provided for in the Interim Order or this Final Order, or seeking to prevent the DIP Agent from credit bidding in connection with any proposed plan or reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code; (f) using or seeking to use Cash Collateral while the DIP Obligations remain outstanding in a manner inconsistent with the Approved DIP Budget or this Final Order; (g) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent and the DIP Lenders; (h) incurring indebtedness outside the ordinary course of business, except as permitted under the DIP Loan Documents; (i) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the DIP Agent, for the benefit of the DIP Lenders; (j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Agent or the DIP Lenders; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens or any other rights or interests of the DIP Agent or the DIP Lenders.

31.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Agent or any of the DIP Lenders to object to the allowance and payment of such fees and expenses.

32.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

33.     Section 506(c) Claims.  No costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against the DIP Agent, the DIP Lenders or the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

34.     No Marshaling/Applications of Proceeds.  Neither the DIP Agent nor the DIP Lenders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine (not including the "equities of the case" exception set forth in section 552(b) of the Bankruptcy Code) with respect to any of the DIP Collateral.

35.     Section 552(b).  The DIP Agent and the DIP Lenders shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code.  The Debtors hereby waive their right to seek the application of the "equities of the case" exception set forth in section 552(b) of the Bankruptcy Code.

36.     Treatment of Local Tax Authority Liens. Notwithstanding any provisions of this Final Order, the statutory liens currently held by (i) City of Houston, Texas, (ii), City of Mercedes, Texas, (iii) Clear Creek Independent School District, (iv) Cypress-Fairbanks Independent School District, (v) Harris County, Texas, (vi) Harris County Municipal Utility District No. 358, (vii) Harris County Water Control Improvement District #155, (viii) Hays County, and (ix) Mercedes Independent School District (collectively, the "**Local Texas Tax Authorities**"), or which shall arise during the course of this case pursuant to applicable non-bankruptcy law, shall neither be primed by nor subordinated to any liens granted pursuant to the Interim Order or this Final Order.  These foregoing statutory liens shall further attach to any proceeds of the sale of any of the Debtor's assets that constitute collateral of the Local Texas Tax Authorities to the same extent and with the same priority as the liens they now hold against the property of the Debtor.  The claims and liens of the Local Texas Tax Authorities shall remain

subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens.

37.    Discharge Waiver.    The Debtor expressly stipulates, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization or unless the DIP Agent and DIP Lenders have consented to other treatment of the DIP Obligations in a confirmed plan of reorganization, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtor shall not propose or support any plan or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP Obligations, unless the DIP Agent and DIP Lenders have approved of an alternate treatment prior to the filing of any plan of reorganization.

38.    Rights Preserved.    Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agent's or the DIP Lenders' right to seek any other or supplemental relief in respect of the Debtor; or (b) any of the rights of the DIP Agent or the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Case or Successor Case, conversion of the Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans.  Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, the DIP Lenders and the Debtor are preserved.

39. <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Agent or the DIP Lenders to seek relief or otherwise exercise rights and remedies under this Final Order, the DIP Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent or the DIP Lenders.

40. <u>Binding Effect of Final Order</u>. Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Agent, the DIP Lenders, all other creditors of the Debtor, any court appointed committee (if appointed), and all other parties in interest and their respective successors and assigns, including any Trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Case or any Successor Case.

41. <u>No Modification of Final Order</u>. Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtor irrevocably waives any right to seek any amendment, modification or extension of this Final Order without the prior written consent of each of the DIP Agent and the DIP Lenders, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent and the DIP Lenders.

42. <u>Final Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Final Order, the provisions of this Final Order shall govern and control.

43. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization

in any Case; (b) converting a Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which the Court abstains from hearing the Case or any Successor Case.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent and DIP Lenders pursuant to this Final Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall maintain priority as provided by this Final Order until all DIP Obligations have been paid in full in cash and all commitments to extend credit under the DIP Facility are terminated.  The terms and provisions concerning the indemnification of the DIP Agent and the DIP Lenders shall continue in the Case and in any Successor Case, following dismissal of the Case or any Successor Case, following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations.

44.     [Reserved.]

45.     Effect of this Final Order.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

46.     Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

*[Remainder of page intentionally left blank]*

47.     Parent Guaranty. Fairway LLC (the "**Parent**") is the non-debtor parent company of the Debtor. In accordance with the terms of conditions of the DIP Credit Agreement, the Parent has agreed to unconditionally guaranty the DIP Obligations (the "**Parent Guaranty**"). This Court shall have jurisdiction over any dispute among the Parent, the Debtor, the DIP Agent and/or the DIP Lenders in connection of the Parent Guaranty.

**IT IS SO ORDERED.**

Dated:  March 16, 2021
          New York, New York

          _____/s/ Martin Glenn_____
                MARTIN GLENN
          United States Bankruptcy Judge